First case this morning is 2012-1149, FLASHPOINT TECH v. ITC, Mr. Fellinger. Before we start, you can approach, but before we start, I wanted to bring up something. I noticed that there is an enormous amount of material in the blue brief and red brief designated confidential. All of that material, as best I can see, pertains to HTC's products and its inter-workings. Who is HTC's counsel? I am, Your Honor. Okay. Now, I noticed that in your green brief, the same material that they all painstakingly designated as confidential is not designated as confidential. For example, the – well, I won't say it until you tell me it's okay, but most of it's on our website as a result. That's correct. It's okay. It's not confidential. Okay. I just wanted to make sure that we weren't going to impinge upon your important confidentiality restrictions. Thank you, Your Honor. So I think that makes you free to talk, too. Yes. Thank you, Your Honor. Please, the Court. This appeal turns on the issue of claim construction and, specifically, two issues of claim construction. One – Well, for you to say that, and your brief says it. In fact, on page 48 of your brief, which begins your argument, you say that the error below rests on a fundamental claim construction error. But as best as I can tell, you didn't at all object to claim construction below. The ITC says claim construction is undisputed. They point out in the red brief and the green brief that you have waived this issue on appeal, and then you just march forward in the gray brief without addressing the waiver as though nobody has said anything. So tell me how it is you have a right to argue claim construction right now. Yes, Your Honor. We did not appeal the ALJ's construction, which we believe is correct. However, on appeal before the Commission, the Commission changed the ALJ's construction in two material ways, and that is what we're appealing from, is the Commission's changing of the ALJ's construction. We do not dispute and, in fact, propose the ALJ's construction. Did you object at the Commission level to the change in the instruction? We didn't. The Commission changed the construction after briefing. Forgive me if I'm wrong, but don't you have an opportunity to do a reconsideration or bring to their attention that they've modified the construction and you didn't have an opportunity to weigh in on it? I mean, were you left without any recourse to bring this below? You have post-trial briefing and all kinds of stuff, right? So why couldn't you bring it to their attention? The change occurred in the Commission's opinion after all the briefing had gone in, Your Honor. And is there no opportunity? I don't know. In district courts, you get to file reconsideration motions. When the district court does something unexpected, you can ask them to reconsider and bring it to their attention, thereby preserving your objection to it. Is that something you can do before the ITC as well? I believe our – as we understood, the proper appellate process from the Commission's final decision was appeal to this court. So I don't believe that we did have an opportunity other than appealing to this court to address the Commission's changed claim construction, which was then applied. And how is it that the Commission changed the construction from what was – what it was that you agreed to? How is it that they changed it? Sure. So there are two – in two material ways, Your Honor. The first, the language information relating to. The ALJ, and this is at Appendix 17-088, said that the information stored need not be in the exact same form or have the exact same content as the first orientation associated with the image that was determined according to the immediately preceding claim orientation. In the Commission opinion, however, this is Appendix at Page 17, the Commission said, information indicating the entire determined first orientation must be stored in memory to enable this subsequent comparison. Therefore, in our view, while the construction below properly gave weight to the language relating to, so as not to require identical content, the Commission in its construction said the information stored needed to be the entire first orientation. And we believe that erroneous construction is what led to an erroneous finding of non-infringement. There is no dispute, Your Honor, that the accused devices store an indication of the top of the image, the visual top left. So is your dispute over whether or not orientation requires both a direction with respect to an access and a portrait or landscape aspect ratio, is your dispute that those two components are not required? No. Because that was present in the ALJ's construction. No, the dispute, Your Honor, is whether defining the top of the image as is described in the context of Figure 6 in the patent, if that is a sufficient indication of the directional component. So why do you think that's claim construction? If you're agreeing with me that you have no objection to the claim construction, which is requiring a direction with respect to an aspect ratio, then your dispute is whether or not the top of the picture meets that limitation it seems to me is a matter of application of claim construction, not a matter of claim construction. And the reason why I believe it's a matter of claim construction, Your Honor, is the entire, what the Commission relied on when saying the entire first orientation needed to be stored is a rotational direction. So in the context of the preferred embodiment, it describes left and right when modifying portrait in the context of Figure 6. And the patent then goes on to say that the preferred method is to define the top. When the patent is referring to display in the context of Figure 9, Figure 12, and Figure 13, the patent only uses the words portrait and landscape and never describes left or right as modifying portrait, never describes upright or inverted as modifying landscape in terms of what is stored as information relating to the first orientation. I guess I understand your argument in terms of a big picture argument because they pre-rotate and so you can't tell if it was left or right when the picture was taken. So I totally get the technology and I understand what your big picture argument is. I guess I just don't understand how you're trying to morph it into claim construction. You want to because that makes it de novo. And you like that idea, but I don't see this as a question of claim construction. The court very clearly said a direction with respect to an axis and an aspect ratio or what's required. You agreed to that. And I just don't see how your argument is finding fault with that claim construction. And I don't see any other claim construction anywhere that you're finding fault with. Sure. So if I could on that point, what the Commission found issue with is whether the rotational direction. So they added the modifier rotational, which would eliminate the definition of the top as being the directional component of the first orientation. And that was our position as well. So orientation has two components. Which one do you think they messed up on? Direction with respect to an axis or the aspect ratio? What they erred in is saying that when they included direction with respect to an axis, it had to be a rotational direction as opposed to the top of the image. That's the... Direction with respect to an axis. And whether upright or top is a direction. And that, in our view, is the error of claim construction because that's what's described in the Preferred Embodiment in Figure 6. And to find otherwise would exclude the Figure 6 process from the claims because Figure 6 nowhere describes storing a rotational direction. It does describe storing a direction. It describes storing top and bottom or only top. But nowhere describes storing the rotational direction. And so that's the added requirement which the Commission imposed. Well, you said the Commission imposed it, but my fabulous law clerk just said to me in page 17083, the ALJ's undisputed claim construction says, quote, right portrait, left portrait, upright landscape, and inverted landscape. How is... That's the ALJ's quote from his claim construction. Given that, how is the Commission modifying it by requiring a direction with respect to an axis be a precise rotational direction? Because the next... That's the first orientation. The next limitation is storing an indication of that. And so the issue of claims construction is whether the indication needs to be identical, meaning left, right, upright, or inverted. I don't see anywhere where it says storing an indication of that. It says storing information relating to the first orientation. And what the ALJ construed that to as being an indication of the first orientation. So what the ALJ's construction of the storing step was that an indication of the first orientation must be stored. And this is... So you're saying that just saying top should be good enough for being an indication. Yes, Your Honor. Guess what? That's not claim construction. That is application of the claim construction because you're saying we meet the claim construction. They store an indication of by indicating top. But it's not claim construction. Just keep going. I apologize. And Your Honor, the second issue with the claim construction that we had, the is that rotating the image can be met by storing the image data in a buffer in one of two directions. What the commission changed the construction of rotating the image to be is processing the image to change the orientation of the image while the image is being stored in the frame buffer. And so the added requirement of processing into the frame buffer, we believe, was an added limitation that was erroneous in the ALJ's analysis of rotating. Figure 12 uses the term frame buffer. However, figure 13 uses the term screen buffer. And what the commission excluded was, again, the agreed operation of the product that the image is admittedly placed into the screen in alignment with the top of the display in one of two directions. And so, therefore, by limiting the rotating as being rotating into a frame buffer as opposed to the subsequent rotation by storing it in one of two directions in a screen buffer, we believe the commission erred, which led to the second error in infringement policy. Your Honor, I had reserved five minutes of time. Do you want to save the rest for rebuttal? I'll save the rest for rebuttal. Thank you. Ms. Chen? Your Honor, good morning, Your Honors. The commission correctly affirmed Judge Lockhart's finding that the HTC Android does not infringe because, one, it never stores an indication of the first orientation, and, two, it never compares the first orientation with the third orientation to rotate the image during image display. This is not an issue of claim construction. Flashpoint today tried to change the claim construction, ALJ's claim construction, in two ways. First, the ALJ construed information relating to the first orientation as an indication of the first orientation. Even though content and format does not have to be the same, it still has to be a sufficient indication of the first orientation. Did the ALJ go further than that and require that the indication has to contain information pertinent to the direction with respect to the axis and the aspect ratio as well? He actually did. When he applied that construction, A17123, he said that just aspect ratio is not an indication of the first orientation. And also, the first orientation... Was that decision on his part part of claim construction or part of the application of the claim? It's the application, but it shows what he meant by the claim construction, Your Honor. So if his claim construction was an indication of, and he then further said that you only have an indication of if you have both things, right? Is that what he said, both of those things? You certainly have an indication of, right? An indication of because, you know, TOPS. You have an indication of... Actually, they do not have an indication of TOPS. Here is where Flashpoint is changing the claim construction again. Because the first orientation, as the claims recite, it's associated with a captured image. And the ALJ on A17087, he said a capturing of the image means before the completion of generating image data from the image sensor. And he did not adopt Flashpoint's claim construction that that period goes all the way up to storing. So that period is what the camera sees on the image sensor. It's the data and the image sensor. Now Flashpoint tries to say that a rotated image, that the gravitational top of the object, or what they call the visual tops, the tops, the leaves of the tree, they're saying that because there's a top to the object, that is an indication of the direction. But they actually changed the claim construction because the direction is associated with the orientation of the camera at capturing. And that capturing does not include the time it's storing. They did not dispute that claim construction. And now in the reply brief, they're saying that captured image means the stored image. But that's not what the ALJ construed as the first orientation has to be associated with the captured image. And not, there's a distinction between the image and the object. And there is a good distinction there on Figure 2 and Column 3, 45 to 6 of the patent. There's an object 112 and there's an image on the image sensor of that object. Let's see if I can simplify this in terms I can understand. You all pre-rotate and so what is stored is an indication of direction of the stored image, but not an indication of the direction of the captured image. Correct. The indication of the direction of the captured image. So what ultimately you know at the end of the day is whether it's landscape or portrait, but you don't know if it's left portrait or right portrait. Yes. No way of knowing. No way of knowing. It's trashed after the image is captured and then stored. Correct. It's destroyed by the Android operating system. In fact, what's normally, normally JPEG files have what's called an orientation tag in the header of the file. And in the JPEG file that's stored in the HTC Android, that orientation tag is purposely missing. I highlight A23707. This is a snapshot of the header file in the stored JPEG file in the Android. And as you can see, there is no orientation tag. And the HTC Android also does not meet the limitations determining whether the third orientation is different from the first orientation during image display. And the ALJ construed that limitation to require comparing the third orientation with the first orientation. And in the HTC Android phones, there's no comparison of the first orientation with the third orientation because the first orientation is just simply not stored. And Flashpoint's own expert admitted, and this is at A18414, that the only comparison that occurs during display time is a comparison between the height and width of the rotated image and the height and width of the camera. But now, Flashpoint in its blue brief at 57 and its gray brief at 13, they actually argue that there's a comparison between the direction of the camera and the direction of the rotated image. And what's interesting, they actually cite absolutely no evidence to support that. The evidence shows that there's no comparison of directions for either camera or rotated image. The only data being compared is the height and width ratio of this camera and the height and width ratio of the rotated image. So that limitation is not met. And as for the rotating limitation, we did not change the ALJ's claim construction. The ALJ based this claim construction on the description in the specification that says that you have to have the ability of storing that image in the frame buffer in two different directions. And here Flashpoint is confusing between frame buffer and screen buffer. In their own, and this is highlighted in the commission opinion at page 47, is that they've actually pretty much admitted that frame buffer is the buffer. What's at issue here is again they're trying to change the claim construction. The ALJ did not adopt their claim construction that simply storing it in the frame buffer in the same way that it came from storage and then subsequently displaying it so that it seems to the viewer that the image has been rotated. That's not enough. What the ALJ said that it's clear in the specification that something has to happen in the frame buffer. But here in the Q's product, nothing happens in the frame buffer because... Ms. Chen, can I ask you a procedural question real quick? Yes. So if they were correct that I construed the commission's opinion as offering a totally different claim construction, modifying the claim construction, would they have a right to then seek before us review of that claim construction even though there was no dispute lodge blow? Would they have had an opportunity? Is there some exhaustion principle where they should have brought something before the commission to alert the commission to their objection to the new claim construction? I believe so, Your Honor, because they could have appealed claim construction, but they did not appeal claim construction and they only appealed... What do you mean appeal? They're certainly arguing to us that they're appealing claim construction. Right. But that's not the issues in the state and they could have filed reconsideration, but they did not. Is your position they would have needed to file reconsideration in order to properly preserve for appeal the issue of claim construction? That's correct. Well, I think that your time is up and we should hear from Mr. Oh, boy, you're going to have to help me. Sure. Sure. Okay. Thank you, Your Honor. Thank you. Thank you, Your Honors. John Schnur on behalf of Interpreters HTC. I just want to address that last point. Flashpoint could have asked and moved for reconsideration of the commission's opinion pursuant to Commission Rule 210.47. They did not. Not only did they not do that, they did not appeal claim construction to the Federal Circuit. Claim construction is not an issue. They sure say they did. On page 48 of their brief, the fundamental error rests on claim construction. You can say they didn't appeal it, but at least they think they did. They're trying to morph the different standards from whether there were substantial limits that supported the commission's decision, an issue of fact, and trying to morph that issue, which is truly the issue that we have here today, into one of claim construction which has a lower standard, which Your Honor pointed out. Well, I think to be fair, they don't like the fact that an indication of is construed as requiring both elements, direction with respect to an axis and the aspect ratio. I think they would like to throw the direction with respect to an axis possibly out the window and not have it be part of claim construction. So I think, you know, maybe technically it is claim construction, but, you know, I'm not entirely sure based on the way they're arguing. Sure. That construction with respect to storing the information related to the first orientation associated with the image, and that image is the captured image. That construction that the ALJ adopted was Flashpoint's construction. That construction that the ALJ adopted was adopted by the commission. So to say that they're disputing the construction is improper. They're disputing the application of that construction to the accused HTC Android devices. ALJ Loughran was clear in his ID, his initial determination in concerning his application of what an indication of a first orientation meant. That was an indication, information that pertained to both the aspect ratio and to the direction. He made in his application for the HTC Android devices that that was an interpretation of what indication meant. It was not an indication just of the aspect ratio or an indication just of the height of the aspect ratio or just an indication of the direction of the aspect ratio. He was clear that the indication had to be sufficient information to identify both the aspect ratio and the direction. In his application with respect to HTC Android devices as well as with respect to his application in that construction to the domestic industry products, the Motorola device. And the issue then would be was there substantial evidence supporting the commission's determination whether there was a direction that was stored. In fact, whether there was a direction that was compared during the comparing steps between the first orientation and the second orientation. And there is substantial evidence that supports the commission's determination. Dr. O'Liverly's testimony saying, you know what, there is no direction stored in the excess header of the HTC Android images. There is no comparison of the directions between the first orientation and the second orientation. In fact, the commission's counsel identified also RDX4003 which is cited to RX4351 which is an image of the HTC Android device depicting the header information. The header information has no orientation tag unlike the orientation tag that exists in the iPhone device which was the domestic industry product. So, there is substantial evidence that supports that there is no direction that is stored, that there is no direction that is used to compare between the first orientation and second orientation as well as compare between the third orientation and the first orientation. That first orientation information that is captured at the time of capturing, now we got to remember that the time of capturing has not been disputed. That end period is at the end of the output of the raw image data out of the image sensor. That raw image data is the captured image. That raw image data does not exist in the HTC Android after that image data is operated on to have a rotated, stored, compressed JPEG file. That first orientation information that was captured at the time of capturing, so at the end that the output data is output from the image sensor, that first orientation information no longer exists either. It is destroyed. Dr. Olivier's testimony confirms that it's destroyed. There is no direction information stored in the header of an HTC Android device. Now, I want to move on to there's an implied license issue. I was hoping you'd want it. The language of 3.3.2 of the Flashpoint Apple 1996 agreement is unambiguous. It states that in addition to the licensing rights, which is in 3.3.1, that Apple has a right to sublicense a subcategory of patents that is then defined to be only those patents that relate to Flashpoint OS and Flashpoint host. Apple had the sublicense rights to license those patents, one of which is the 769 patent. To say that 3.3.2 is a subset of the rights of 3.3.1 is not supported by the law, not supported by the clear language of the two provisions, not supported by any of the provisions in the 1996 agreement. The other provisions that Flashpoint points to as in support of their position that 3.3.2 is a subset and is restricted by the boundaries of the license rights that are provided in 3.3.1 pertain to technology licenses, not the patent licenses. There's a distinction between patent licenses and technology licenses. So, in the end, the resort to parole evidence or the resort to the intent of the parties is not necessary. Under California law, if the language of the contract is unambiguous, there is no need to resort to parole evidence. So, it's the position of HTC that the language is clear and unambiguous that 3.3.2 allowed Apple to sublicense their rights, one of which was the 769 patent, and to sublicense those rights to other parties, one of which was Windows Phone's operating system. I have no further comments, Your Honor. Thank you. Mr. Bellinger, you have five minutes of rebuttal time. Thank you, Your Honor. Your Honor, I wanted to clarify one of the commission's statements with reference to page 35 of Flashpoint's brief, which is an illustration of figure six. And this is the question of whether defining the top of the image stores an indication of the directional component of the orientation. What is not, is part of the commission opinion, this is Appendix 18, there is a tag that's either missing or one that indicates that the zero, zero point of the stored image is the top left corner of that image. And Your Honor, an indication of that is preserved through storing the top left corner, and indeed it is. As you can see from figure six on page 35 of the brief, if there's a left portrait image, the top left corner will be the, what was originally the right edge of the image sensor or camera. If it's a left rotation portrait, the top edge will be what was the stored image, is the top of the image. You're preserving an indication of which part of the image was left or right when the image data was read off the sensor. I'm confused by what you're saying right now. I was under the impression, and please correct me if I'm wrong, but that they stored, there is possibly an indication of direction relative to an axis, so you can't tell whether it's left portrait or right portrait. What is stored in their system, you can't tell whether originally, at the time of capture, it was left portrait or right portrait. That is true, Your Honor, but what you can tell is what the original top of the image was, and that stored information will be different if the original image was left portrait or right portrait, and it has to be so in order to display the image upright later. This is the part I guess I'm not following, because you're saying that what is stored is something that allows you to deduce whether it was left portrait or right portrait, but I don't get that from the evidence of record. No, and that's not my argument, Your Honor. I agree that you can't deduce whether the camera was held to the left or whether the camera was held to the right. What you can tell by defining the top of the image is what the visual top originally was, and those will be two different points on the image depending on whether the camera was held to the right or the left. And so because the claim construction is information based on or an indication of the first orientation, indicating the visual top is sufficient. There's no need to go back to determine how the camera was held. The whole purpose of the invention as described in the patent is to display the provides sufficient information to later perform the comparison between the image and the display. And I have one citation to the file history that supports that, and HTC's brief, they argue... Mr. Belanger, you've got about a minute and a half. When Mr. Schnurr turned to the question of sublicensing, I said I was hoping you'd do it, and the reason I was hoping you would do it is because I wanted to ask you about it. I think his arguments have force, and I want to hear what you have to say about it. Sure. So on the issue of sublicensing, it's our position that the section 3.3.1, 3.3.2, and 3.3.3 of the agreement must be read together, and reading those together along with the stated intent of the agreement, which was to spin out Flashpoint and allow it to license technology and patents, that the commission's reading would essentially negate that purpose by allowing Apple or allowing, in effect, HTC to receive a broader license than Apple received. And that the way the agreement is crafted, 3.3.1 gives Apple a license for Apple products and has a specific carve-out preventing Apple from having a license to have third-party cameras made with a third-party brand, cameras or scanners. And the commission's... There's no new product. In 3.3.2, but it says in addition, which says that the two causes, 3.3.1 and 3.3.2, are interrelated. And so... Okay. You can have a hamburger. In addition, you can have french fries. Yes. But if you said... French fries are above and beyond the hamburger, right? But if you said you can have a hamburger, but you can't have french fries, in addition you can sub-license your rights, it would be inconsistent with the first cause to say... Yeah, more like you can have a hamburger, but you can't put ketchup on it. You can also have french fries, and if you want ketchup there, go for it. I respectfully disagree with the analogy. The purpose of 3.3.1 is to allow Apple to make products and allow... make PCs, which is what they're making, and to allow Flashpoint to make cameras, and the license is segregated as such. It wouldn't make sense to have a sub-license right where third parties could make and brand digital cameras licensed to the patents when Apple is prevented from itself. You didn't draft the license, did you? I did not. Well, I think your time is up. Do you have a final thought you'd like us to hear? Just one final thought regarding the file history and this idea of whether pre-rotation excludes storing an indication of the first orientation. In terms of the file history, I'd direct you to Appendix A-7928, which is Figure 3 from the Pro Scheme 909 patent, and the Commission in its opinion and HTC in its brief have acknowledged that this figure shows an example of pre-rotation, and that HTC's expert agreed at Appendix A-19178, lines 16 to 20, the analogy between the pre-rotation in Peruski and the pre-rotation in the EVA-4G. The applicant at Appendix 7-9... Okay, just 7-9-6-1 at the other side. Thank you, Your Honor. Okay, I thank all the counsel for their arguments. The case is submitted.